SNEED, J.,
delivered the opinion of tbe Court.
The question in this ease is, Whether a common carrier, .upon refusal of the consignee to .accept the goods at the port of destination, may, on his own motion, sell them for freight and charges, when he could have stored them with a warehouseman a reasonable time for the owner without advance of freight and charges, 'but subject to the lien? This was an action of tro-ver for the conversion of two hundred and forty-three sacks of cotton seed shipped from Hickman, Kentucky, on defendant’s boat, and consigned to R. P. Walt & Co., for account of plaintiff. The seed were placed upon the wharf at Memphis, and Walt & Co. notified that they would be delivered upon payment of freight and charges. The consignees, Walt & Co., refused to receive the seed, stating that they had been instructed not to do so. It seems that Walt & Co, had been the merchants of 'the plaintiff, who was' a planter in Mississippi, but they had been advised by the plaintiff ’not to receive this consignment of cotton seed — and that another firm in the city had been instructed to •do so. This fact was not communicated to the defendant, and upon the -refusal of Walt <Ss Co. to receive the seed, the defendant made efforts to find one who would advance. the freight due and store the séed for the owner. This could .not be done; but it was *566 practicable to have stored the seed without an advance-of the freight and charges, and subject to the carrier’s lien. It is shown that the seed thus stored were not perishable, but might have been kept without injury for several months. The defendant remained at the landing at Memphis three days, and on the third day sold the seed upon the wharf at private sale for less than the freight claimed, and 'much less than the market value of the seed. No effort was made to ^leave the-seed with an actioneer to be sold, for the alleged-reason that defendant did not wish to put any more charges on them. After the sale the boat, left at once-upon her return trip to Hickman — the running time-being twenty-four hours. The special plea of defendant embodied the fact of the refusal of Walt & Co., to accept and pay the charges, and the failure after diligent effort to find any one who would advance the' freight and store the seed for plaintiff, and that the-seed were perishable, as the substance of the defense. The verdict and judgment were for the defendant, and the plaintiff has appealed in error. The plaintiff asked the court to charge the jury, that if they found that the cotton seed were brought by defendant to Memphis and the consignees refused to receive them, it-was the duty of the defendant to store the seed in a-warehouse, if this could be done, for at least a reasonable time, to enable the plaintiff to receive them- and take care of them. And if the defendant could so have stored them and reserved his lien, it was his. duty under the law to do so — and the fact that no-warehouseman would thus receive them and advance- *567 the freight was no defense. The court declined so to' charge, but charged the jury “ that if money was advanced by defendant to the consignor to be paid upon delivery of the goods, this amount, together with the freight, was a special charge upon the goods; that the defendant had a right to demand this payment upon storage, and if no warehouseman would take the goods and advance those charges, the defendant could sell the same, exercising reasonable discretion in the sale of the same; that these charges were more necessary to be paid upon goods that were perishable in their nature and deteriorating in value; that it was the duty of the consignee to see that the goods were received when ready for delivery at the place of destination, and that the defendant in the whole matter must exercise reasonable and proper' judgment in the preservation and disposition of the .same.” We think the law is put too strongly in this charge in favor of the common carrier and against the rights of the owner in such a case as this. It is not true, as assumed in the charge, that the goods in this case were of a nature so perishable as to be subject to an immediate deterioration in value; nor is it the law that in any case where the goods are perishable, the carrier, on refusal of the consignee to receive the goods, can sell alone in his own interest so as to make his freight and charges, without regard to the trust reposed in him to do his best also to subserve the interest of the owner. The general principle is, that the delivery to the consignee and the payment of the freight are concurrent acts to be performed at *568 the same time, so that the carrier is entitled to retain possession until he receives or is tendered the freight. If the consignee refuses to accept them) the carrier then holds them at the disposal and for the ‘ benefit of the consignor, and is entitled to look to the latter for payment. Add. Cont, 518. But if the goods aré of a perishable nature and in the absence of the consignee or his refusal to receive them, it becomes a matter of necessity to sell — then the carrier must first consider what is best to be done for the owner — for there is a trust upon him in reference to 'the goods which the law will. not permit him to ignore in order that he may make his own lien effectual. He may sell in such case, not in virtue of his lien, but in virtue of his trust relation to the owner, and in the interest of the owner. Out of the price he may unquestionably retain his freight and charges, but he sells in such case in the interest of the owner and not in virtue of his lien. He continues in his trust relation to the owner and is bound to all the fidelity of other agents. Thus it is said that in such case he becomes, by mere intendment and authority of law, the agent of all concerned, and, upon unquestionable proof of necessity, he may sell the goods. The goods must be perishable, and the sale must be one of absolute necessity to the owners: Arthur v. Schooner Cassius, 5 Story Rep., 97. It is necessity at last which, as observed by Lord Coke, is the law of a particular time and place, and which makes that lawful which is otherwise unlawful — that justifies a summary sale without a process of law in any case. In the absence of that *569 Controlling necessity, the carrier may retain for Ms lien, but can only enforce it by' due process of law: Hunt v. Haskell, 24 Maine, 342. It will be observed that tire goods in this case were not perishable in the sense of the law, so as to make the sale thereof a matter of absolute exigent necessity. The proof is, that the cotton seed might have been stored for months in safety — and there can be no question that the carrier might have changed his relation and become a bailee for the owner after his freight was discharged, and thus retained the possession and the lien for freight and charges, by storing the goods with any one who would accept them. The proof is that he might have stored them, but declined to do so. Upon refusal o'f the consignee to receive the goods, the carrier should have stored them, with or without the advance of the freight and charges, for a reasonable time, for the best interest of the owner, whose agent and bailee for their protection, he then became. Thus it is said: “The principle upon which the carrier’s duty is based, in the event of a refusal of the consignee to receive the goods, is simply to regard himself as an agent for the owners, and as such invested with authority to take such steps in relation to the goods as will advance the owner’s interest and purposes, consistently with a reasonable security to himself for his freight and charges. What he ought to do in a given ease will manifestly depend upon circumstances; and there can be and ought to be no universal rule in course to be followed in all cases. If acting as an agent for the owners he pursues such a course as men of ordinary *570 prudence would follow, he is protected by the law, whatever may be the result.” In the case of Arthur v. The Schooner Cassius, 1 Story C. C. R., 97, Judge Story considered it “the duty of the master to land th.e freight at the port of destination, and if the consignee refused to receive it, to place it in the hands of some trustworthy person for security of his lien for freight, and subject thereto, for the benefit and account of the owners.” “No right,” he adds, “even under such circumstances could exist on the part of the master to sell the cargo, unless it was perishable, and might otherwise have been lost or perished: ” 7 Missouri, 245. And so it is said by the Supreme Court of New York, “when goods are safely conveyed to the place of destination and the consignee is dead, absent, or refuses to receive, or is not known, and can not after due efforts are made be found, the carrier may discharge himself from further responsibilities, by placing the goods in store with some responsible third person in that business at the place of delivery, for and on account of the owner: ” Fisk v. Newton, 1 Den., 47, et vid.; Briggs v. Boston & Lowell R. R. Co., 6 Allen R., 248. It seems to us that the instructions of his honor to the jury were not in accordance with these principles. The lien of the carrier and his right to enforce it is but the correlative of the owner's right to the proper preservation of the goods. They are not incompatible and may very well exist together. In any event the carrier is safe if' the goods are protected.
Let the judgment be reversed and a new trial be had.